IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARON MORROW, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.:  4:20-cv-928 |
| | ) |
| STEVEN OGUNJOBI and | ) |
| | ) |
| JACOB STEIN, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. In this civil-rights action, Plaintiff Sharon Morrow alleges that St. Louis police officers retaliated against her for recording arrests from a public sidewalk. The officers unreasonably seized Ms. Morrow, used excessive force against her—causing lasting injury—and then arrested, booked, and detained her in a city jail, though she was unarmed, non-threatening, nonviolent, non-resisting, and not reasonably suspected of committing any crime. Plaintiff seeks judgment against the officers for violating her clearly established First Amendment and Fourth Amendment rights.

## PARTIES

2. Plaintiff Sharon Morrow is a citizen of Missouri who resides in St. Louis County.

3. Defendant Steven Ogunjobi and Jacob Stein are police officers employed by the St. Louis Metropolitan Police Department who were, at all times relevant to this complaint, acting under color of law. They are sued in their individual capacity.

1

## JURISDICTION AND VENUE

4. Plaintiff brings these claims pursuant to 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution, incorporated as against States and their municipal divisions through the Fourteenth Amendment.

5. The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution of the United States and § 1343(a)(3) to redress the deprivation of a right secured by the Constitution of the United States.

6. Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the City of St. Louis.

7. Divisional venue is proper in the Eastern Division because the a substantial part of the events leading to the claims for relief arose in the City of St. Louis and at least one of the defendants resides in the Eastern Division. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

## FACTS

8. On Sunday, April 14, 2019, Sharon Morrow drove downtown to distribute food and essential supplies to unhoused residents of the City of St. Louis—something she does many times a year.

9. Upon her arrival, she parked her vehicle legally on Market Street between Tucker Boulevard and Fourteenth Street.

10. When she exited, she noticed that two St. Louis police officers, Bridget Fournie and Defendant Steven Ogunjobi, were arresting someone.

11. She stood on the sidewalk and used her smartphone to record the arrest.

12. The arrestee was yelling, so a couple other people were standing quietly nearby on the sidewalk observing the arrest, including Marcus Hunt.

13. After a minute or two, Defendant Ogunjobi noticed Mr. Hunt was there.

14. Defendant Ogunjobi turned, walked at least three paces toward Mr. Hunt, and instructed him to move back.

15. After a brief exchange, Mr. Hunt did so, and Defendant Ogunjobi walked back to the arrestee.

16. Defendant Ogunjobi finished writing on a pad. Then he and Officer Fournie led the arrestee—who was yelling but had been seated, cuffed, and compliant—to a police car parked on Market Street.

17. The officers put the arrestee into the backseat of the vehicle without incident, and Defendant Ogunjobi closed the door.

18. Ms. Morrow continued to record from her position on the sidewalk in between the vehicle and Mr. Hunt, who had moved behind her after Defendant Ogunjobi had told him to move back.

19. From the back door of the vehicle, Defendant Ogunjobi walked twelve paces—crossing by Ms. Morrow—toward Mr. Hunt and asked his name.

20. Mr. Hunt declined to provide his name.

21. Defendant Ogunjobi turned toward Officer Fournie, who was still back by the vehicle, and raised his voice to ask if she had a second set of cuffs, indicating that they would be for Mr. Hunt.

22. Another person standing nearby on the sidewalk and Ms. Morrow both calmly pleaded that Mr. Hunt had not done anything wrong.

23. Defendant Ogunjobi took no notice and instead instructed Mr. Hunt to put his hands behind his back.

24. Mr. Hunt lay down on the sidewalk with his arms spread.

25. Ms. Morrow, who was still standing several paces from Defendant Ogunjobi, repeated calmly some variations of, "This guy didn't do anything. He did nothing."

26. Several more police officers arrived and moved onto the sidewalk.

27. Mr. Hunt tried to stand back up.

28. At that point, five officers took hold of Mr. Hunt, jerking his body around in an effort to cuff his arms behind his back.

29. Eventually, the officers maneuvered Mr. Hunt back down to the ground, repeating, "Stop resisting," though no resistance was evident from where Ms. Morrow was standing.

30. Ms. Morrow continued to record from her smartphone, at all times multiple paces from the officers and Mr. Hunt, who was on the ground.

31. One of the officers tased Mr. Hunt multiple times while other officers knelt on or compressed various parts of his body.

32. As a group, the officers handcuffed Mr. Hunt and then moved him into a seated position on the sidewalk.

33. After that, Defendant Ogunjobi—who had repeatedly glanced at Ms. Morrow's camera—walked three paces toward Ms. Morrow and the other people standing on the sidewalk and shouted for them to move back or they would be next.

34. Ms. Morrow complied.

35. In fact, Ms. Morrow went all the way back to her vehicle, which was still legally parked on Market Street, and got in the driver's seat.

36. Ms. Morrow turned on her vehicle and buckled her seatbelt, preparing to leave.

37. She continued to record from her smartphone.

38. Defendant Ogunjobi continued to glance at Ms. Morrow's smartphone camera.

39. Ms. Morrow put her vehicle in drive and turned on her signal to reenter the roadway, but there were police cars ahead of and behind her vehicle. The vehicles were not immediately adjacent to the sidewalk but rather were sticking into the roadway, so it was difficult to ensure there was no traffic coming.

40. Defendant Ogunjobi left his position near the seated Mr. Hunt and strode toward Ms. Morrow's vehicle, walking at least six paces to her driver's side window.

41. Through the closed window, he stated, "If you don't leave, I'm going to arrest you."

42. Ms. Morrow replied, "I can't see, sir."

43. As she said that, a police SUV sped by. It parked in front of her, next to the vehicle that the first arrestee was in, boxing in Ms. Morrow's vehicle even further.

44. Then Defendant Ogunjobi stated, "Step out. Step out of the vehicle."

45. Ms. Morrow hesitated and pleaded to be allowed to leave.

46. Defendant Officer Jacob Stein approached Ms. Morrow's vehicle and shouted at her to get out or he would break her vehicle window.

47. Ms. Morrow unlocked her vehicle doors.

48. As she attempted to shift from drive to park, Defendants Ogunjobi and Stein began to remove her from her vehicle.

5

49. Ms. Morrow, who is a breast cancer survivor and has had several surgeries that affect her mobility, shouted that she was disabled and could not move well.

50. Defendants Ogunjobi and Stein nonetheless forcibly jerked Ms. Morrow around, wrenched her arms behind her back, and performed a leg sweep, knocking her face flat onto the asphalt.

51. This caused Ms. Morrow excruciating pain, as well as bruising, sprains, and muscle stiffness.

52. It also reactivated severe neuropathy and shooting pains in Ms. Morrow's arms, hands, and fingers—something that had previously occurred as a side effect of the treatment she had undergone for breast cancer but had since dissipated.

53. The neuropathy, shooting pains, and muscle stiffness lasted for months following Ms. Morrow's arrest and caused her significant discomfort, interfering with her daily activities and causing her serious distress.

54. After Ms. Morrow was handcuffed, she was roughly loaded into a vehicle transported to the Justice Center, where she was booked and detained in a cell for hours.

55. She was not released until she was bonded out by a friend.

56. Ms. Morrow was then charged with interfering with a police officer and resisting arrest.

57. She was given a court date, but the charges were dropped without explanation.

58. Ms. Morrow has refrained from certain expressive activity in the City of St. Louis because she is afraid of retaliation by the police.

## **COUNT I: FIRST AMENDMENT**
*Against Defendant Ogunjobi*

59. Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

60. Ms. Morrow engaged in constitutionally protected expressive activity when she stood on a public sidewalk and recorded police officers carrying out their official duties.

61. Ms. Morrow also engaged in constitutionally protected expressive activity when she spoke calmly to the officers at various points about her disagreement with their actions.

62. Defendant Ogunjobi retaliated against Ms. Morrow for engaging in constitutionally protected expressive activity.

63. He decided to arrest Ms. Morrow because of retaliatory animus.

64. Arresting a person for their constitutionally protected expressive activity is an act that would chill a person of ordinary firmness from continuing to engage in a constitutionally protected activity and it did, in fact, chill Ms. Morrow.

65. The right to be free of governmental retaliation for exercise of free speech was clearly established at the time of the violations giving rise to this suit.

66. There was no probable cause to effect the retaliatory arrest of Ms. Morrow.

WHEREFORE, Plaintiff respectfully requests this Court:

    A. Enter judgment in favor of Plaintiff and against Defendant Ogunjobi;

    B. Award Plaintiff nominal, compensatory, and punitive damages against Defendant Ogunjobi for his violation of Plaintiff's clearly established First Amendment rights under color of state law;

    C. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D. Allow such other and further relief as the Court deems just and proper.

## COUNT II: FOURTH AMENDMENT
*Unlawful Seizure and Excessive Force*
*Against Defendants Ogunjobi and Stein*

67. Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

68. Ms. Morrow was unlawfully seized by Defendants Ogunjobi and Stein.

69. Ms. Morrow's seizure was objectively unreasonable.

70. Ms. Morrow was unarmed, nonviolent, had not committed any crime and was not reasonably suspected of committing any crime, and posed no threat to the safety of any police officer or any other person.

71. Ms. Morrow complied with every instruction she was given except to pull out blind into oncoming traffic.

72. Even if Ms. Morrow's arrest was lawful—which it was not—the force applied by Defendants Ogunjobi and Stein was objectively unreasonable.

73. It was clearly established at the time that arresting a person in the absence of probable cause violates the Fourth Amendment.

74. It was also clearly established at the time that a leg sweep was objectively unreasonable under the circumstances of this case.

WHEREFORE, Plaintiff respectfully requests this Court:

A. Enter judgment in favor of Plaintiff and against Defendants Ogunjobi and Stein;

  B. Award Plaintiff nominal, compensatory, and punitive damages against Defendants for their violation of Plaintiff's clearly established Fourth Amendment rights under color of state law;

  C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

  D. Allow such other and further relief as the Court deems just and proper.

### COUNT III: FAILURE TO INTERVENE
*Against Defendants Ogunjobi and Stein*

75. Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

76. Defendants Ogunjobi and Stein were present before and during the violation of Ms. Morrow's First and Fourth Amendment rights.

77. Defendants Ogunjobi and Stein knew that Ms. Morrow's arrest lacked probable cause and was objectively unreasonable and unlawful.

78. Defendants Ogunjobi and Stein also knew that no force was necessary to effect her arrest, as she was compliant, non-threatening, and nonviolent.

79. The officers failed to intervene with the unlawful arrest or the objectively unreasonable use of force, though they were immediately present and had a realistic opportunity to do so.

80. The officers knew that forcibly contorting Ms. Morrow's body and performing a leg sweep would be a violation of her constitutional rights.

81. In the alternative to Count II, despite having an opportunity to prevent the excessive and retaliatory use of force against Ms. Morrow and a duty to do so, Defendants Ogunjobi and Stein failed to intervene.

9

WHEREFORE, Plaintiff respectfully requests this Court:

    A.    Enter judgment in favor of Plaintiff and against Defendants;

    B.    Award Plaintiff nominal, compensatory, and punitive damages against Defendants for their violation of Plaintiff's clearly established Fourth Amendment rights under color of state law;

    C.    Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

    D.    Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Kayla DeLoach, #72424MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114
(314) 652-3112 (facsimile)
arothert@aclu-mo.org
jsteffan@aclu-mo.org
kdeloach@aclu-mo.org

Gillian R. Wilcox, #61278MO
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
ACLU of Missouri Foundation
 (816) 470-9938
gwilcox@aclu-mo.org

*Attorneys for Plaintiff*